IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ROBERT SANTINO MCAFEE,

    Plaintiff,

v.                                                                       1:18-cv-01205-LF

ANDREW M. SAUL,[1] Commissioner
of the Social Security Administration,

    Defendant.

## **MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on plaintiff Robert Santino McAfee's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum (Doc. 19), which was fully briefed on July 30, 2019. *See* Docs. 22, 23, 24. The parties consented to my entering final judgment in this case. Docs. 4, 8, 13. Having meticulously reviewed the entire record and being fully advised in the premises, I find that the Administrative Law Judge ("ALJ") failed to properly consider the opinion of Mr. McAfee's treating nurse practitioner, Marie Mugavin, PhD, CNP. I therefore grant Mr. McAfee's motion and remand this case to the Commissioner for further proceedings consistent with this opinion.

### I.    **Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were

---

[1] Andrew M. Saul became the Commissioner of the Social Security Administration on June 17, 2019, and is automatically substituted as the defendant in this action. FED. R. CIV. P. 25(d).

[2] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 416.1481, as it is in this case.

applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted). The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

II.     **Applicable Law and Sequential Evaluation Process**

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[3] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

### III. Background and Procedural History

Mr. McAfee was born in 1973, completed high school,[4] and worked as a restaurant server, window installer, custodian, landscaper, store dock employee, and asbestos remover

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

[4] There is conflicting evidence in the record regarding Mr. McAfee's education. *See* AR 41 (Mr. McAfee testified at hearing before ALJ that he only completed the eighth grade); AR 29 (ALJ decision stating that Mr. McAfee has a high school education); AR 221 (disability application in which Mr. McAfee stated he completed high school).

3

laborer. AR 29, 46, 221.[5] Mr. McAfee filed an application for Supplemental Security Income ("SSI") on February 25, 2015, alleging disability since September 1, 2008 due to a number of mental impairments.[6] AR 198–206. The Social Security Administration ("SSA") denied his claim initially on June 26, 2015. AR 98–101. The SSA denied his claim on reconsideration on November 6, 2015. AR 106–10. Mr. McAfee requested a hearing before an ALJ. AR 112–15. On August 15, 2017, ALJ Michael Leppala held a hearing. AR 35–77. ALJ Leppala issued an unfavorable decision on February 14, 2018. AR 12–30.

At step one, ALJ Leppala found that Mr. McAfee had not engaged in substantial, gainful activity since his application date of February 25, 2015. AR 17. At step two, the ALJ found that Mr. McAfee had the severe impairments of affective and anxiety disorders. AR 17–18. At step three, the ALJ found that none of Mr. McAfee's impairments, alone or in combination, met or medically equaled a Listing. AR 18–20. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Mr. McAfee's RFC. AR 20–28. The ALJ found Mr. McAfee had the RFC to perform a full range of work at all exertional levels but with the following non-exertional limitations:

> He is able to understand, carry out, and remember simple two- and three-step instructions and to make commensurate work-related decisions. He is able to respond appropriately to supervision, coworkers, and work situations, deal with simple changes in the work setting, [and] maintain concentration, persistence and pace for up to and including two hours at a time with normal breaks throughout a normal workday.

AR 20.

---

[5] Document 11-1 is the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

[6] Mr. McAfee listed his mental impairments as "bi polor manic depressive boarderline paranoia; manic depressant (bi polar); PTSD; instatutionized [sic]; [and] schizophrenia." AR 220.

At step four, the ALJ found that Mr. McAfee was unable to perform his past relevant work. AR 29. At step five, the ALJ found that Mr. McAfee was not disabled because he could perform jobs that exist in significant numbers in the national economy, such as cleaner/housekeeper and assembler. AR 29–30.

Mr. McAfee requested that the Appeals Council review the ALJ's unfavorable decision. AR 197. On October 31, 2018, the Appeals Council denied the request for review. AR 1–6. Mr. McAfee timely filed his appeal to this Court on December 20, 2018.[7] Doc. 1.

## IV. Mr. McAfee's Claim

On appeal, Mr. McAfee raises a single argument for reversing and remanding this case—specifically, that the ALJ improperly rejected the opinion of treating nurse practitioner Marie Mugavin, PhD, CNP, in violation of SSR 06-03p.[8] Doc. 19 at 1.

## V. Analysis

Mr. McAfee argues that the reasons the ALJ gave for assigning little weight to CNP Mugavin's August 8, 2017 opinion are either legally insufficient or not supported by substantial evidence. Doc. 19 at 20–25; Doc. 23 at 1–6. In response, the Commissioner acknowledges that Mr. McAfee had "waxing and waning psychological symptoms," but nevertheless maintains that the ALJ properly discounted CNP Mugavin's opinion. Doc. 22 at 1, 9–14. For the reasons discussed below, I agree with Mr. McAfee.

---

[7] A claimant has 60 days to file an appeal. The 60 days begins running five days after the decision is mailed. 20 C.F.R. § 404.981; *see also* AR 2.

[8] Mr. McAfee raised an additional argument on appeal regarding the ALJ's treatment of the opinion of Gidget McCook, LSAA, LMHC. Doc. 19 at 1, 25–27. In his reply brief, Mr. McAfee withdrew this argument. Doc. 23 at 1 n.3.

CNP Mugavin is considered an "other source" under the regulations. *See* SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).[9] An "other source" cannot give a "medical opinion," cannot establish the existence of a medically determinable impairment, and is not considered a "treating source[ ]." *Id*. However, "other source" opinions "are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." *Id*. at *3. Opinions from "other sources" are weighed using the same factors used to weigh opinions from acceptable medical sources. *Id*. at *4–*5; *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007). Those factors are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the [other source's] opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the [other source] is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (citation omitted); 20 CFR § 416.927(c) (effective March 27, 2017). The ALJ "should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03p, 2006 WL 2329939, at *6.

In *Frantz*, the Tenth Circuit held that an ALJ erred by not discussing what weight he gave an "other source" opinion on the severity and functional effects of the claimant's limitations.

---

[9] SSR 06-03p was rescinded "for claims filed on or after March 27, 2017." *See* Federal Register Notice Vol. 82, No. 57, p. 15263, effective March 27, 2017. Because Mr. McAfee filed his claim before this date, SSR 06-03p is applicable.

6

509 F.3d at 1302. It also is error for an ALJ to ignore evidence from an "other source" which would support a finding of disability, "while highlighting evidence favorable to the finding of nondisability." *Id.*; *see also Clifton v. Chater,* 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.").

On February 19, 2015, Mr. McAfee began seeking treatment from CNP Mugavin at Sage Neuroscience Center. AR 472. Over the course of approximately twenty-two visits in the following two years,[10] CNP Mugavin treated Mr. McAfee for the following conditions: moderate anger reaction, generalized anxiety disorder, chronic depression, bipolar disorder, and chronic post-traumatic stress disorder. *Id.* On August 8, 2017, CNP Mugavin completed a Medical Assessment of Ability to do Work-Related Activities (Mental) "checklist-style" form on Mr. McAfee's behalf. AR 572–73. On that form, CNP Mugavin assessed that Mr. McAfee had one moderate and nineteen marked mental limitations in the areas of understanding and memory, sustained concentration and persistence, social interaction, and adaptation.[11] *Id.* Specifically, she assessed a moderate limitation in Mr. McAfee's ability to carry out very short and simple

---

[10] CNP Mugavin treated Mr. McAfee on the following dates: 2/19/2015, 3/5/2015, 3/25/2015, 4/22/2015, 6/10/2015, 7/31/2015, 9/14/2015, 10/20/2015, 12/1/2015, 1/19/2016, 2/26/2016, 4/4/2016, 4/8/2016, 5/18/2016, 6/21/2016, 8/2/2016, 9/6/2016, 10/31/2016, 1/2/2017, 2/27/2017, 5/23/2017, 6/21/2017. *See* AR 350–57; 481–85; 487–93; 496–501; 506–31.

[11] The assessment form defined a "marked" limitation as "[a] severe limitation which <u>precludes</u> the individual's ability usefully to perform the designated activity on a regular and sustained basis . . . . The individual cannot be expected to function independently, appropriately, and effectively on a regular and sustained basis." AR 572. A "moderate" limitation was defined as a "limitation that <u>seriously interferes</u> with the individual's ability to perform the designated activity on a regular and sustained basis . . . . The individual may be able to perform this work-related mental function on a limited basis[;] [h]owever, the individual should not be placed in a job setting where the mental function is critical to job performance or to job purpose." *Id.*

7

instructions and marked limitations in all remaining areas of functioning: remembering locations and work-like procedures; understanding and remembering very short and simple instructions; understanding and remembering detailed instructions; carrying out detailed instructions; maintaining attention and concentration for extended periods of time (i.e. 2-hours segments); performing activities within a schedule, maintaining regular attendance and being punctual within customary tolerance; sustaining an ordinary routine without special supervision; working in coordination with/or proximity to others without being distracted by them; making simple work-related decisions; completing a normal workday and workweek without interruptions from psychological based symptoms and performing at a consistent pace without unreasonable number and length of rest periods; interacting appropriately with the general public; asking simple questions or requesting assistance; accepting instructions and responding appropriately to criticism from supervisors; getting along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness; responding appropriately to changes in the work place; being aware of normal hazards and taking adequate precautions; traveling in unfamiliar places or using public transportation; and setting realistic goals or making plans independently of others. *Id*. CNP Mugavin also completed forms in which she found that Mr. McAfee met the listing criteria for both 12.04 Affective Disorders and 12.06 Anxiety-Related Disorders. AR 574–75.

In his decision, the ALJ afforded "little weight" to CNP Mugavin's opinion for three reasons. AR 26–27. First, he discounted the opinion because it was "submitted in the form of a checklist, without supporting rationale or citation to support in the treatment findings." AR 27. He explained that CNP Mugavin "provided no evidence or explanation in support of the opinions reflected in the checked boxes." *Id*. Second, the ALJ concluded that CNP Mugavin's opinion

was inconsistent with Mr. McAfee's activities during the period at issue. *Id*. The ALJ specifically pointed to the following activities:

> attending and successfully completing a professional training, being selected to teach at the same barber school after his graduation, maintaining a long-term relationship with his girlfriend that culminated in their marriage, effectively participating in his treatment protocol that includes not only advocating for medication management but also learning stress management and coping skills and participating in individual therapy with significant success.

*Id*. Third, the ALJ found that CNP Mugavin's opinion was inconsistent with her own treatment notes, which "consistently report[ed] that" Mr. McAfee was "cooperative and maintained good eye contact, exhibited no psychomotor agitation or retardation, exhibited normal speech and thought process and content . . . . [He] was consistently alert and fully oriented, exhibited fair concentration, insight and judgment, and his memory was intact." *Id*.

Mr. McAfee argues that CNP Mugavin's use of checklist forms to record her opinion was not a proper basis for the ALJ to discount the opinion. Doc. 19 at 21; Doc. 23 at 5–6. "[C]ase law addressing medical source opinions expressed on checkbox-style forms underscores that the critical question is whether the checkbox findings, either on the form itself or elsewhere in the record, are supported by substantial evidence." *Tenorio v. Berryhill*, Civ. No. 17-138 SCY, 2018 WL 6594228, at *9 (D.N.M. Dec. 14, 2018); *see also Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) (recognizing that checklist forms do "not constitute substantial evidence unless the checkmarks are supported by thorough written reports or persuasive testimony"); *Andersen v. Astrue*, 319 F. App'x 712, 723 (10th Cir. 2009) (unpublished). Here, the ALJ did not discount CNP Mugavin's opinion merely because it was provided on a checklist-style form; rather, he concluded that her findings on the form were not supported by substantial evidence, either based on the form itself or in the record. As to the form itself, the Court agrees that it could not, on its own, constitute substantial evidence of CNP Mugavin's assessment because she did not complete

any narrative sections of the form and thus did not offer any direct explanation for her opinion. Had the ALJ categorically rejected CNP Mugavin's opinion solely on this ground without reviewing her treatment records, it would have been error. This he did not do. Rather, the ALJ also examined CNP Mugavin's treatment records as other evidence in the record to ascertain whether there was evidence to support the opinion. While the ALJ's approach was correct, the reasons he ultimately gave for according little weight to CNP Mugavin's opinion are legally insufficient for the reasons discussed below.

The ALJ first explained that "despite [CNP Mugavin's] longstanding treating relationship" with Mr. McAfee, he accorded "little weight" to her opinion because it was "not well-supported by the medical evidence in the record" and was "inconsistent with her own treatment notes." AR 26–27. The ALJ did not, however, state what medical evidence beyond CNP Mugavin's treatment notes did not support her opinion. This is contrary to SSR 06-03p's requirement that the ALJ's analysis of an "other source" opinion be sufficiently specific to allow a subsequent reviewer to follow the adjudicator's reasoning. SSR 06-03p, 2006 WL 2329939, at *6. As for CNP Mugavin's treatment notes, the ALJ determined that CNP Mugavin's opinion was not supported by her mental status examination findings which essentially demonstrated a mostly normal mental status. *See* AR 27 (citing specifically to CNP Mugavin's findings that Mr. McAfee was "cooperative and maintained good eye contact, exhibited no psychomotor agitation or retardation, exhibited normal speech and thought process and content[,] . . . was consistently alert and fully oriented, exhibited fair concentration, insight and judgment, and his memory was intact"). However, in so doing, the ALJ failed to discuss many of CNP Mugavin's mental status examination findings and other treatment assessments that would support her opinion: persistent

10

anxiety,[12] the presence of auditory and visual hallucinations,[13] reports of feeling aggressive and wanting to hurt others,[14] and reports of a "persistent pattern of inattention/hyperactivity-impulsivity that interferes with functioning and negatively impacts social/academic/occupational

---

[12] *See* AR 346 ("appears highly anxious"; "mood is anxious"); AR 349 ("anxiety levels are higher now because he is trying to manage a family and start a new career, and stay sane"); AR 350–51 ("mood is dysthymic/anxious"; "patient is highly anxious today"; "stress management techniques reviewed for this highly anxious patient"); AR 352 ("mood is anxious"); AR 354 ("mood is dysthymic/anxious"; "he is highly agitated/hyper today"); AR 357 ("[a]ppears highly anxious"; "mood is dysthymic/anxious"); AR 481–82 ("mood is dysthymic/anxious"; "appears anxious"; "[r]eports worsening of depression(10), anxiety/bipolar(10), angry outbursts(3), ptsd(10) symptoms in the last month on scale of 0–10 with 10 being very symptomatic/problematic"); AR 484 ("mood is dysthymic/anxious"; "appears anxious"; "[r]eports worsening of depression(10), anxiety/bipolar(10), angry outbursts(3), ptsd(10) symptoms in the last month on scale of 0–10 with 10 being very symptomatic/problematic"); AR 488 ("mood is dysthymic/anxious"; "appears anxious"; "[r]eports worsening of depression(9), anxiety/bipolar(9), angry outbursts(3), ptsd(10) symptoms in the last month on scale of 0–10 with 10 being very symptomatic/problematic"); AR 496, 499, 506, 509, 513, 522, 527 ("mood is anxious"); AR 510 (recommend taking additional 1/2 tab of medication during "the hours he is most anxious"); AR 517 ("appears highly agitated"; "mood is dysthymic/anxious"); AR 520 ("appears anxious"; "mood is dysthymic/anxious"); AR 525 ("[a]ppears very anxious and excitable"); AR 528 ("appears highly anxious").

[13] *See* AR 346 ("positive for auditory hallucinations"); AR 354 ("reports hearing voices that tell him to go back to prison [and that] he is no good"); AR 482 ("auditory and visual hallucinations an issue"); AR 484 ("still with auditory hallucinations/jimmy/r/t"); AR 488 ("auditory and visual hallucinations"; "hearing voices"); AR 510 ("he is highly anxious, hearing voices, agitated, wants to hurt someone really bad"); AR 513 ("still hearing voices . . . still very agitated when at school/around people"); AR 517 ("positive for auditory/visual hallucinations"); AR 518 ("concerned that patient is still hearing voices"); AR 521 ("patient in to report [he] is highly agitated[;] is hearing voices . . . reviews how he is taking his medication which is as prescribed but not helping to quiet the voices"); AR 523 ("patient in to report that he still hears voices when he is at barber school"); AR 525–26 ("patient in to report that he is highly anxious and the more anxious he gets the louder the voices in his head are. . . . his instructor has noticed his behavior changes, muttering to himself while sweeping up hair and high anxiety and has talked to him about it"); AR 528 ("positive for auditory hallucinations").

[14] *See* AR 509 ("wants to hurt someone really bad"); AR 512 ("afraid of his compulsion to hurt others"); AR 518 ("concerned that he has thoughts of hurting other people"); AR 525 (voices "tell him to hurt the other students but he will not do that").

11

activities."[15] Importantly, no other treatment records controvert CNP Mugavin's treatment findings because CNP Mugavin was Mr. McAfee's only mental health provider for the relevant time period.[16] The ALJ was not required to discuss every piece of evidence in CNP Mugavin's treatment records, but in addition to discussing the treatment findings that supported his decision, the ALJ was required to discuss the uncontroverted evidence he chose not to rely upon as well as the significantly probative evidence that he rejected. *See Frantz*, 509 F.3d. at 1302 (ALJ may not ignore evidence from "other source" that supports a finding of disability "while highlighting evidence favorable to the finding of nondisability"); *see also Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (an ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability).

The Commissioner disputes that the ALJ's discussion of CNP Mugavin's treatment findings was incomplete. Doc. 22 at 10–11. He points in particular to the ALJ's summary of CNP Mugavin's treatment records earlier in his decision where the ALJ "explicitly discussed [CNP Mugavin's] findings related to [Mr. McAfee's] anxiety, agitation, and dysthymic mood." *Id*. at 10. The Commissioner, however, overlooks the fact that the ALJ did not address these

---

[15] AR 484; *see also* AR 483 (noting Mr. McAfee's reports of inattention and hyperactivity with symptoms that include: failing to pay close attention to details, difficulty sustaining attention in tasks, difficulty listening when spoken to directly, failing to follow through on instructions, avoiding work or being reluctant to engage in tasks that require sustained mental effort, difficulty organizing tasks and activities, being easily distracted and forgetful in daily activities, and often interrupting or intruding on others).

[16] Although CNP Mugavin referred Mr. McAfee to two other providers at Sage Neuroscience Center, she was Mr. McAfee's primary treating mental health provider. The first referral was to CNP Bryan Krumm to evaluate the "addition of medical marijuana to manage anxiety in lieu of high dosing benzo." AR 500. CNP Krumm conducted this evaluation on September 12, 2016 and did not prescribe medical cannabis. AR 494. The second referral was to LCSW Therese Mondragon for a psychosocial assessment. AR 502–05. It appears that Mr. McAfee subsequently saw LSCW Mondragon for individual therapy sessions, but those records are not in the administrative record because Sage Neuroscience Center refused to release them. AR 376.

12

findings when he weighed CNP Mugavin's opinion.  The ALJ's earlier summary of CNP Mugavin's treatment records does not cure his subsequent failure to address the evidence in those records that would support a finding of disability when he weighed CNP Mugavin's opinion.  Thus, while the Court agrees with the Commissioner that the ALJ was entitled to resolve evidentiary conflicts in the record, *Allman v. Colvin*, 813 F.3d 1325, 1333 (10th Cir. 2016), the ALJ did not resolve any conflicts when he considered CNP Mugavin's opinion, choosing instead to completely ignore those treatment findings that would have supported CNP Mugavin's opinion.  In short, the Court will not draw connections between the ALJ's summary of treatment findings and his weighing of an opinion when the ALJ himself did not make these connections.

Next, the ALJ accorded little weight to CNP Mugavin's opinion because he found it was not supported by Mr. McAfee's activities of daily living, namely his completion of barber school and being selected to teach at the school, his long-term relationship with his girlfriend, and his successful participation in his treatment protocol and in individual counseling.  *See* AR 27.  At first glance, these appear to be facially valid reasons for discounting CNP Mugavin's opinion regarding the severity of Mr. McAfee's mental impairments.  Upon closer review, however, these reasons are not entirely supported by the record.  CNP Mugavin's treatment records reveal that Mr. McAfee routinely reported problems with his relationship and that in June 2017, Mr. McAfee's girlfriend broke up with him because of his hallucinations.  AR 481.  While Mr. McAfee did graduate from barber school, the record shows that he quit barber school because of his mental health issues and only was able to return after his instructor made accommodations for him, that his instructor arranged for him to teach at the school after Mr. McAfee reported he could not work in a barbershop because of his anxiety and his hallucinations, and that Mr.

McAfee reported to CNP Mugavin increased anxiety while in school as well as feelings of aggression and voices telling him to hurt other students. *See* AR 509; 518. As such, the ALJ's reliance on Mr. McAfee's relationship, his barber school completion, and participation in treatment as substantial evidence that Mr. McAfee can perform work-related mental activities on a sustained basis is misplaced. *See Krauser v. Astrue*, 638 F.3d 1324, 1333 (10th Cir. 2011) (finding that the specific facts of claimant's daily activities painted a very different picture than the generalities relied upon by the ALJ).

Additionally, the ALJ pointed to Mr. McAfee "effectively participating in his treatment protocol that includes not only advocating for medication management but also learning stress management and coping skills and participating in individual therapy with significant success." AR 27. The ALJ did not, however, specify what this individual therapy was that Mr. McAfee completed with significant success. And while the ALJ pointed to Mr. McAfee's compliance with his treatment protocol as prescribed by CNP Mugavin as well as her discussions with Mr. McAfee during treatment visits regarding stress management and coping skills, he failed to explain how Mr. McAfee's compliance with CNP Mugavin's treatment protocol refuted her opinions related to Mr. McAfee's ability to do work-related mental activities. In short, the ALJ "did not explain what about Mr. McAfee's participation in these activities was inconsistent with the work-related limitations to which [CNP] Mugavin opined." Doc. 23 at 4.

CNP Mugavin was Mr. McAfee's primary mental health care provider for an extended period of time (February 2015 through August 2017). She was also the *only* examining mental health provider of record who provided a functional assessment of Mr. McAfee's ability to do work-related mental activities. In assigning little weight to CNP Mugavin's opinion, the ALJ did not comply with the requirements of SSR 06-03p, and remand is necessary for this reason.

## VI. Conclusion

**IT IS THEREFORE ORDERED** that Mr. McAfee's Motion to Reverse and Remand for a Rehearing (Doc. 19) is GRANTED.

**IT IS FURTHER ORDERED** that the Commissioner's final decision is REVERSED, and this case is REMANDED for further proceedings in accordance with this opinion.

_____
Laura Fashing
United States Magistrate Judge
 Presiding by Consent